UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

LOUIS JOSEPH BADORE,

     Plaintiff,

v.                                  Case No:   6:15-cv-1126-Orl-TBS

COMMISSIONER OF SOCIAL
SECURITY,

     Defendant.

## ORDER[1]

Plaintiff Louis Joseph Badore brings this action for judicial review of a final

decision of Defendant, the Commissioner of the Social Security Administration denying

his application for a period of disability and disability insurance benefits. Following a

review of the administrative record and the joint memorandum submitted by the parties,

and for the reasons that follow, the Commissioner's final decision will be **AFFIRMED**.

## I. Background

Plaintiff filed his application for benefits on October 1, 2012, alleging that he has

been disabled since January 23, 2012 (Tr. 11, 131-32). His claims were denied initially on

December 5, 2012, after which Plaintiff requested a *de novo* hearing before an

administrative law judge ("ALJ"). An administrative hearing was held on January 2, 2014,

at which time Plaintiff, represented by counsel, appeared and testified, as did a vocational

expert (Tr. 25). In a decision dated February 28, 2014, the ALJ concluded that Plaintiff

was not disabled from January 23, 2012, through the date of the administrative decision

---

[1] The parties consented to proceed in front of a Magistrate Judge and on September 17, 2015, the District
Judge referred the case to the undersigned for all further proceedings and the entry of judgment in
accordance with 28 U.S.C. § 636(c) and FED. R. CIV. P. 73 (Doc. 11).

(Tr. 11-20). The ALJ's decision became the final decision of the Commissioner when the Appeals Council declined review on May 15, 2015 (Tr. 1-3).

Plaintiff was 51 years of age on the date of the ALJ's decision (Tr. 20, 131). He had at least a twelfth grade education, was able to communicate in English, and had past relevant work as a title searcher and office manager (Tr. 19). He is insured for disability insurance purposes through September 30, 2017 (Tr. 13).

## II. The ALJ's Decision

When determining whether an individual is disabled, the ALJ must follow the Commissioner's five-step sequential evaluation process that appears in 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4). The ALJ must determine whether the claimant (1) is currently employed; (2) has a severe impairment; (3) has an impairment or combination of impairments that meets or medically equals an impairment listed at 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) can perform past relevant work; and (5) retains the ability to perform any work in the national economy. See Phillips v. Barnhart, 357 F.3d 1232, 1237-1240 (11th Cir. 2004). The claimant bears the burden of persuasion through step four and at step five, the burden shifts to the Commissioner. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987); Phillips, 357 F.3d at 1241 n.10.

The ALJ determined that Plaintiff had not engaged in substantial gainful activity since his alleged onset of disability date (Tr. 13). Next, the ALJ found that Plaintiff's severe impairments consist of degenerative disc disease of the cervical, lumbar, and thoracic spine and depressive disorder-NOS (Id.). The ALJ decided that Plaintiff's impairments did not meet or equal a listed impairment and left him with the residual functional capacity ("RFC") to

- 2 -

perform light work as defined in 20 CFR 404.1567(b), because the claimant is able to lift and/or carry twenty pounds occasionally and ten pounds frequently, stand and/or walk for six hours in an eight-hour workday, and sit for six hours in an eight-hour workday. The claimant is able to occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and push/pull with the upper and lower extremities, but the claimant cannot reach overhead. Additionally, the claimant must work in a low-stress environment, defined as a work environment that requires occasional decision-making and occasional judgment. The claimant is able to occasionally deal with changes in a routine work setting.

(Tr. 14-16). Although this RFC precluded the performance of Plaintiff's past relevant work, the ALJ relied on the testimony of a vocational expert to find that Plaintiff was nevertheless able to perform a significant number of jobs in the national economy, including such representative jobs as investigator, dealer accounts; food management aide; and exhibit display representative (Tr. 19-20). Based on these findings, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act from January 23, 2012, through the date of the administrative decision (Tr. 19-20).

### III. Medical Evidence[2]

*Medical Evidence - Physical Impairments*

Plaintiff submitted to an orthopedic examination in March 2013 by physician Kalyani Ganesh (Tr. 239-41). Plaintiff alleged having trouble sitting or concentrating, alleged being depressed, and stated he experienced pain when lifting, sitting, standing, or performing overhead activity (Tr. 239). He also alleged having tingling in his arms and legs (Tr. 239).

Dr. Ganesh observed that Plaintiff was able to drive, cooked three days a week, cleaned and shopped once a week, and showered, dressed, and watched TV daily (Tr. 239-40). Plaintiff appeared to be in no acute distress (Tr. 240). He was able to heel and toe walk without difficulty, had normal gait

---

[2] This section is quoted from the parties' Joint Memorandum (Doc. 16).

and stance without an assistive device, and had a full squat (Tr. 240). He did not need help getting off the exam table, and he was able to rise from a chair without difficulty (Tr. 240).

Plaintiff's hand and finger dexterity were intact (Tr. 240). He had full grip in both hands (Tr. 240). There was some limited range of motion in Plaintiff's cervical spine, although he had no pain or spasm, and Dr. Ganesh identified no trigger points (Tr. 240). Plaintiff had full range of motion in his upper extremities with no joint abnormality (Tr. 240). He also had full muscle strength with no sensory or reflex abnormalities (Tr. 240).

Plaintiff's lumbar spine had full range of motion (Tr. 241). Straight leg raise testing was negative bilaterally (Tr. 241). As with the upper extremities, Dr. Ganesh found full strength and no abnormalities in Plaintiff's lower extremities (Tr. 241).

Dr. Ganesh opined that Plaintiff's prognosis was stable (Tr. 241). He further opined that Plaintiff had no gross limitation in sitting, standing, or walking, but had minimum to mild limitation in lifting, carrying, pushing, and pulling (Tr. 241).

Dr. Ganesh provided a medical source statement based on the examination (Tr. 242-47). He opined, in relevant part, that Plaintiff could lift 20 pounds continuously and 50 pounds frequently (Tr. 242); could sit, stand, and walk 8 hours each in a workday (Tr. 243); and had the sole postural limitation of frequent pushing and pulling (Tr. 244). Finally, Dr. Ganesh opined that Plaintiff could perform a variety of work related tasks (Tr. 247).

*Medical Evidence – Mental Impairments*

Plaintiff submitted to a psychological examination in November 2012 by psychologist Dennis Noia (Tr. 203-06). Plaintiff reported that he was unable to work due to pain and difficulty concentrating (Tr. 203). However, he did not report any significant manic or anxiety related symptoms, or symptoms of a formal thought disorder, although he alleged having symptoms of depression (Tr. 204).

Dr. Noia found Plaintiff was cooperative with adequate social skills (Tr. 204). He was appropriately dressed with good hygiene, normal posture and gait, normal motor behavior, and appropriate eye contact (Tr. 204-05). He had normal speech and coherent and goal-directed thought processes (Tr. 205).

> His mood was depressed and his affect was constricted (Tr. 205).
>
> Plaintiff's attention and concentration was intact (Tr. 205).   He was able to count, do simple calculations, and count serial 3s (Tr. 205). His recent and remote memory were mildly impaired, although his intellectual functioning was average (Tr. 205). He had good insight and judgment (Tr. 205).
>
> Dr. Noia ultimately opined that Plaintiff could: understanding [sic] and following simple instructions and directions, perform simple and some complex tasks with supervision and independently, maintain attention and concentration for tasks, regularly attend to a routine and maintain a schedule, learn new tasks, make appropriate decisions, and relate to and interact moderately well with others (Tr. 206). Dr. Noia also indicated Plaintiff was having "some difficulty dealing with stress" (Tr. 206).
>
> Nonexamining psychologist T. Harding reviewed Plaintiff's file in December 2012 (Tr. 70, 232-33). He opined that Plaintiff's mental impairments were non-severe (Tr. 70, 232-33).

(Doc. 16 at 4-6 (footnote omitted)).

## IV. Standard of Review

The scope of the Court's review is limited to determining whether the Commissioner applied the correct legal standards and whether the Commissioner's findings are supported by substantial evidence. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158 (11th Cir. 2004). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "more than a scintilla but less than a preponderance. It is such relevant evidence that a reasonable person would accept as adequate to support a conclusion." Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1178 (11th Cir. 2011) (citation omitted).

When the Commissioner's decision is supported by substantial evidence the district court will affirm even if the reviewer would have reached a contrary result as finder

of fact, and even if the reviewer finds that the preponderance of the evidence is against

the Commissioner's decision. Miles v. Chater, 84 F.3d 1397, 1400 (11th Cir. 1996). The

district court "may not decide facts anew, reweigh the evidence, or substitute our

judgment for that of the [Commissioner.]" Id. "The district court must view the record as a

whole, taking into account evidence favorable as well as unfavorable to the decision."

Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (per curiam); accord Lowery v.

Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (the court must scrutinize the entire record to

determine the reasonableness of the factual findings).

## V. Discussion

Plaintiff contends that the ALJ erred in evaluating the medical opinions of record

(Doc. 16 at 6-9, 16-18). Plaintiff argues that Dr. Ganesh and Dr. Noia are treating

physicians whose opinions are entitled to controlling weight (Id. at 7, 18). He argues that

the ALJ "not only fails to afford any weight to Dr. Ganesh, she fails to explain her

determination or reasoning for doing so." (Id. at 7). According to Plaintiff, "[a]lthough the

ALJ mentions Dr. Ganesh and describes him as claimant's treating psychiatrist, she goes

no further in her discussion." (Id. at 8). And, "[a]lthough Dr. Ganesh does not state directly

that claimant 'cannot work' or that he meets a listing, there is ample information provided

by Dr. Ganesh in his medical records and Mental RFC that would lead to a determination

of disabled." (Id. at 17). Plaintiff argues that Dr. Noia stated "Claimant's true issue is with

inability of dealing with stress and its affects on Claimant's ability to work, an issue which

was not considered by the ALJ in her opinion." (Id.).

Plaintiff also challenges the ALJ's evaluation of Dr. Harding's opinion (Doc. 16 at

16-18). He argues that Dr. Harding's opinion should not have been given greater weight

than Dr. Noia's opinion (Id.). Plaintiff asserts that "there was significant medical evidence

from Dr. Noia which was entered into evidence after the State agency psychologist, Dr. Harding, entered his opinion." (Doc. 16 at 18). And, that "the State agency psychologist's opinion must be read together with Dr. Noia's Mental RFC, even if it wasn't received until the Appeals Council level." (Id.).

A comparison of the record and the ALJ's decision with Plaintiff's brief raises several concerns. First, counsel has grossly misrepresented the medical evidence and the ALJ's decision; counsel's characterization of the ALJ's decision is so detached from reality that it begs the question whether she actually read the decision in its entirety. Second, counsel uses terms of art as if they are interchangeable, yet at the same time she attempts to rely on their significance. As a result, counsel's arguments are riddled with inconsistencies. This decision will only selectively discuss these inconsistencies and counsel's misrepresentations.

Plaintiff argues that his "treating psychiatrist, Dr. Ganesh, should be afforded controlling weight, as this meets all the requirements under SSR 96-2p and the code. He is a treating source, his opinion is a medical opinion, the opinion is well supported by the evidence, and not inconsistent with other substantial evidence." (Doc. 16 at 7). Plaintiff further argues that the ALJ failed to provide "good reasons" for discounting Dr. Ganesh's opinion (Id.).

The opinion of a "treating source" must be given controlling weight if that opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is "not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2). The ALJ must give the opinion of a treating source "substantial or considerable weight" unless "good cause" is shown to the contrary. Winschel, 631 F.3d at 1179 (quoting Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997)). "Good cause

exists 'when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records.'" Id. (quoting Phillips, 357 F.3d at 1241). Even if the opinion of a treating source is not entitled to controlling weight, an ALJ is nevertheless required to evaluate the opinion by considering such factors as (1) length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the medical evidence and explanation supporting the opinion; (4) consistency with the record as a whole; (5) specialization in the pertinent medical issues; and (6) other factors that tend to support or contradict the opinion. 20 C.F.R. §§ 404.1527(c)(2)-(6); Weekley v. Comm'r of Soc. Sec., 486 F. App'x 806, 808 (11th Cir. 2012); Logreco v. Astrue, No. 5:07-CV-80-OC-10GRJ, 2008 WL 783593, at *10 (M.D. Fla. Mar. 20, 2008). The ALJ "must specify what weight is given to a treating physician's opinion and any reason for giving it no weight, and failure to do so is reversible error." MacGregor v. Bowen, 786 F.2d 1050, 1053 (11th Cir. 1986) (citing Broughton v. Heckler, 776 F.2d 960, 961-62 (11th Cir. 1985)). This special treatment afforded the opinions of treating sources recognizes that "'these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s).'" Reynolds-Buckley v. Comm'r of Soc. Sec., 457 F. App'x 862, 864 (11th Cir. 2012) (quoting 20 C.F.R. § 404.1527(d)(2)).

Contrary to Plaintiff's assertions, Dr. Ganesh is not a psychiatrist or a treating source, and she did not provide a "Mental RFC." Dr. Ganesh performed a "consultative orthopedic examination" in March 2013 (Doc. 16 at 7; Tr. 239-241 ("The above-mentioned claimant was examined for a consultative examination. No doctor-patient relationship exists or is implied by this examination.")). As a consultative examiner, Dr. Ganesh is

properly classified as a nontreating source. See 20 C.F.R. § 404.1502 ("Nontreating

source means a physician, psychologist, or other acceptable medical source who has

examined [the claimant] but does not have, or did not have, an ongoing treatment

relationship with [the claimant]."). When dealing with nontreating sources, the

Commissioner will simply "give more weight to the opinion of a source who has examined

[the claimant] than to the opinion of a source who has not examined" the claimant. 20

C.F.R. § 404.1527(d)(1). Still, as with other "medical opinions," the ALJ must state with

particularity the weight given to the medical opinion of a nontreating source and the

reasons for assigning that weight. Winschel, 631 F.3d at 1179 (quoting Sharfarz v.

Bowen, 825 F.2d 278, 279 (11th Cir. 1987)). Remand is appropriate "when the ALJ fails

to 'state with at least some measure of clarity the grounds for his decision,'" even if

"'some rationale might have supported the ALJ's conclusion.'" Id. (quoting Owens v.

Heckler, 748 F2d 1511, 1516 (11th Cir. 1984)).

　　　Plaintiff refers to Dr. Noia as both a "consultative psychologist" and a "treating

physician." (Doc. 16 at 8, 18). Dr. Noia performed a psychiatric examination on November

28, 2012 (Tr. 203-06). As a one-time consultative examiner, Dr. Noia is properly classified

as a nontreating source. See 20 C.F.R. § 404.1502.

　　　Plaintiff refers to Dr. Harding as both a "consultative examiner" and a "state agency

review psychologist." (Doc. 16 at 16-18). He argues that the ALJ affords an unidentified

consultative examiner's opinion "significant weight" and the opinion of the state agency

psychologist "some weight." (Id. at 16). But, the ALJ did not assign "some weight" to any

opinion of record. And, the ALJ assigned "significant weight" to Dr. Harding's opinion (Tr.

18). Dr. Harding reviewed the record and completed a psychiatric review technique on

December 5, 2012 (Tr. 70). As a doctor who did not examine Plaintiff but provided a

medical opinion in the case, Dr. Harding is properly classified as a nonexamining source. 20 C.F.R. § 404.1502. The ALJ is required to evaluate the medical opinion of a nonexamining source. 20 C.F.R. § 404.1527.

The ALJ discussed the evaluations and opinions of Drs. Ganesh, Noia, and Harding throughout her opinion. At step two of the sequential evaluation process, the ALJ noted that in March 2013, at Defendant's request, Plaintiff underwent a consultative orthopedic examination with Kalyani Ganesh, M.D. (Tr. 13). Dr. Ganesh noted that Plaintiff reported a twenty-year history of intermittent neck pain and that radiology reports revealed degenerative changes in his spine (Id.). Based on his physical examination of Plaintiff, Dr. Ganesh concluded that he had physical functional limitations related to the diagnoses of lower back pain, degenerative disc disease, and herniated disc bulge with spurs (Id.). The ALJ noted that these diagnoses were substantiated by objective radiology reports throughout the record, including a November 2011 MRI of the claimant's cervical spine that revealed degenerative changes, including cervical spondylosis with multiple protruding discs and an extruded disc herniation, and a December 2013 MRI of Plaintiff's lumbar and thoracic spine that revealed degenerative changes (Id. at 14). Dr. Ganesh's March 2013 physical examination also revealed that Plaintiff had a full range of motion of the shoulders as well as intact hand and finger dexterity with full bilateral grip strength (Id.).

Dennis M. Noia, Ph.D. performed a consultative psychological examination and found that Plaintiff had no history of psychiatric hospitalizations and no history of mental health treatment (Id.). After administering a mental status examination Dr. Noia assigned Plaintiff a diagnosis of depressive disorder-NOS (Id.).

The ALJ considered these evaluations when determining whether Plaintiff had an

impairment or combination of impairments that met or medically equalled the severity of a

listed impairment. The ALJ determined that Plaintiff had mild restrictions in activities of

daily living, based on Dr. Noia's and Dr. Ganesh's observations that he was able to dress,

bathe, and groom himself as well as cook and prepare food, do general cleaning, do

some shopping, manage money, and drive short distances (Id. at 15). Dr. Harding

reviewed Plaintiff's medical records and opined that he had no limitations with activities of

daily living (Id.).

The ALJ also found that Plaintiff had no difficulties in social functioning (Id.).

Plaintiff testified at the January 2, 2014 hearing that he gets along pretty well with other

people and medical evidence in the record shows that he interacts appropriately with

medical personnel during examinations (Id.). Dr. Harding opined that Plaintiff had no

limitations in maintaining social functioning (Id.).

The ALJ concluded that Plaintiff had moderate difficulties with regard to

concentration, persistence, or pace (Id.). Dr. Harding opined that Plaintiff had only mild

limitations in this category, but Plaintiff testified at the January 2, 2014 hearing that he

had a great deal of difficulty concentrating (Id.). In his November 2012 mental status

examination Dr. Noia found Plaintiff had intact attention and concentration skills and

mildly impaired recent and remote memory skills (Id.). Dr. Noia concluded that although

Plaintiff had some difficulty dealing with stress, he was able to maintain attention and

concentration for tasks and regularly attend to a routine and maintain a schedule (Id.).

In evaluating Plaintiff's credibility, the ALJ noted that his complaints of physical and

functional limitations were inconsistent with Dr. Ganesh's and Dr. Noia's observations:

> Although there is no evidence of ongoing specialized
> treatment, the claimant testified at the hearing that he has a
> history of problems obtaining health insurance. However,

when the claimant was physically examined in March 2013, consultative examiner Dr. Ganesh pointed out that the claimant was in no acute distress with a normal gait and stance, and that the claimant was able to walk on his heels and toes without difficulty (Exhibit 8F, pages 2-3). Dr. Ganesh also noted that the claimant had a full squat, needed no assistive devices, was able to rise from a chair without difficulty, and needed no help changing for the exam or getting on and off the examination table. She added that the claimant had a full range of motion and full strength in his lower and upper extremities with no sensory deficits. As noted above, the claimant testified at the January 2, 2014 hearing that he has a great deal of difficulty concentrating, but a November 2012 mental status examination [by Dr. Noia] revealed intact attention and concentration skills and mildly impaired recent and remote memory skills (Exhibit 3F, page 3). There are no treating source opinions to support the allegations of disabling functional limitations.

(Tr. 17-18).   The ALJ also provided an independent evaluation of the medical opinions:

After administering a mental status examination of the claimant in November 2012, Dr. Noia concluded that, despite some difficulty dealing with stress, the claimant is able to understand and follow simple instructions and directions, perform simple and some complex tasks with supervision and independently, maintain attention and concentration for tasks, regularly attend to a routine and maintain a schedule, lean new tasks, make appropriate decisions, and relate to and interact moderately well with others (Exhibit 3F, page 4).

After physically examining the claimant in March 2013, Dr. Ganesh opined that the claimant is able to lift and/or carry fifty pounds frequently and twenty pounds continuously as well as sit, stand, and walk for eight hours each in an eight-hour workday (Exhibit 8F, pages 4-10). Dr. Ganesh also opined that the claimant is able to frequently push and pull.

Light work involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, an individual must have the ability to do substantially all of these activities. If someone can do light work, the

> Administration determines that he or she can also do
> sedentary work, unless there are additional limiting factors
> such as loss of fine dexterity or inability to sit for long periods.
>
> The residual functional capacity detailed above is consistent
> with and supported by the observations of treating, reviewing,
> and examining sources in the medical records. In reaching
> this conclusion, the undersigned gives great weight to the
> opinions of Dr. Noia and Dr. Ganesh due to their
> programmatic expertise, their examinations of the claimant,
> and the consistency of their opinions with the overall medical
> evidence (Exhibits 3F and 8F). The undersigned gives
> significant weight to the opinions of Dr. Harding due to his
> programmatic expertise, his review of the claimant's medical
> records, and the relative consistency of his opinions with the
> longitudinal medical evidence in the record, including the lack
> of specialized psychological treatment (Exhibits IA and 6F).
> There are no treating source opinions to support the
> allegations of disabling functional limitations.

(Tr. 18).

The ALJ was sufficiently specific as to the weight assigned each medical opinion and the reasons for assigning that weight. Considering the ALJ's evaluation, it is hard to fathom how counsel could have reasonably believed any of the following representations she made to the Court: (1) "In the instant case the ALJ not only fails to afford any weight to Dr. Ganesh, she fails to explain her determination or reasoning for doing so." (Doc. 16 at 7); (2) "Although the ALJ mentions Dr. Ganesh and describes him as claimant's treating psychiatrist, she goes no further in her discussion." (Id. at 8); (3) "Dr. Noia also states that Claimant's true issue is with inability of dealing with stress and its affects on Claimant's ability to work, an issue which was not considered by the ALJ in her opinion." (Id.); and (4) "Not only did the ALJ fail to afford the treating physician any weight, she failed to provide any reasoning for her decision to do so." (Id. at 9).

Plaintiff also erroneously argues that (1) the ALJ gave Dr. Harding's opinion more weight than Dr. Noia's (Id. at 18); (2) "there was significant medical evidence from Dr.

Noia which was entered into evidence after the State agency psychologist, Dr. Harding, entered his opinion" (Id.; Tr. 71-72 (discussing Dr. Noia's opinion in the initial determination); and (3) Dr. Noia's opinion "wasn't received until the Appeals Council level" (Doc. 16 at 18; Tr. 71-72 (discussing Dr. Noia's opinion in the initial determination). None of these arguments have any support in the record.

The ALJ evaluated Dr. Ganesh's report and medical opinion and assigned it "great weight" because, *inter alia*, it was consistent with the overall medical evidence. Dr. Ganesh opined that Plaintiff has no gross limitation sitting, standing, and walking, and a minimum to mild limitation lifting, carrying, pushing, and pulling (Tr. 241). The ALJ included in Plaintiff's RFC's assessment, limitations to a reduced range of light work with occasional pushing and pulling with the upper and lower extremities reasonably accounts for the limitations found by Dr. Ganesh. Plaintiff argues that the ALJ either overlooked or was not made aware of Dr. Ganesh's "medical evidence," (Doc. 16 at 17), but Plaintiff's narrative description of Dr. Ganesh's evaluation is taken almost verbatim from the ALJ's evaluation of the evidence (Id. at 7; Tr. 13-14). Plaintiff cites to this same narrative and argues that the ALJ should have found him disabled based on Dr. Ganesh's diagnoses (Doc. 16 at 7-8). Plaintiff has not pointed to any evidence of greater limitations on his ability to work than those found in the RFC. The fact that Plaintiff has been diagnosed with impairments says nothing about the severity of the diagnoses or whether Plaintiff has resulting work limitations. See Moore v. Barnhart, 405 F.3d 1208, 1213 n.6 (11th Cir. 2005) ("To a large extent, Moore questions the ALJ's RFC determination based solely on the fact that she *has* varus leg instability and shoulder separation. However, the mere existence of these impairments does not reveal the extent to which they limit her ability to work or undermine the ALJ's determination in that regard.") (citing McCruter v. Bowen,

791 F.2d 1544, 1547 (11th Cir. 1986) ("'severity' of a medically ascertained disability must be measured in terms of its effect upon ability to work")); Colbert v. Astrue, No. 3:07-CV-669-J-HTS, 2008 WL 2329419, at *3 (M.D. Fla. June 4, 2008) ("[A] 'mere diagnosis ... says nothing about the severity of the condition.'"). Moreover, Dr. Ganesh opined that despite Plaintiff's herniated disc bulge with spurs, degenerative disease, and lower back pain, he had only mild limitation in lifting, carrying, pushing, and pulling (Tr. 241). The ALJ assigned Dr. Ganesh's opinion great weight and accounted for these limitations in the RFC. The ALJ therefore did not err in evaluating Dr. Ganesh's opinion.

The ALJ also evaluated Dr. Noia's report and medical opinion and assigned it "great weight" because, *inter alia*, it was consistent with the overall medical evidence. Dr. Noia opined that Plaintiff appears capable of understanding and following simple instructions and directions, performing simple and some complex tasks with supervision and independently, maintaining attention and concentration for tasks, regularly attending to a routine and maintaining a schedule, learning new tasks, making appropriate decisions, and relating to and interacting moderately well with others (Tr. 206). Dr. Noia also opined that Plaintiff "appears to be having some difficulty dealing with stress." (Id.). The limitations in Plaintiff's RFC to "work in a low-stress environment, defined as a work environment that requires occasional decision-making and occasional judgment," and to "occasionally deal with changes in a routine work setting" reasonably accounts for the limitations found by Dr. Noia. Plaintiff again cites to Dr. Noia's diagnosis of depressive disorder NOS and argues that the ALJ did not "follow[] the diagnosis." (Doc. 16 at 8). But again, Plaintiff has not provided any evidence of greater limitations than those found by the ALJ. Plaintiff also argues that Dr. Noia's opinion that Plaintiff has difficulty dealing with stress is consistent with his testimony. Plaintiff has not explained, however, how his

testimony or Dr. Noia's opinion is inconsistent with the limitation in his RFC to "work in a low-stress environment." Accordingly, I find no error in the ALJ's evaluation of Dr. Noia's opinion.

For the reasons discussed *supra*, I also find no error in the ALJ's evaluation of Dr. Harding's opinion. Plaintiff's challenge has no support in the record.

Finally, Plaintiff argues that the ALJ erred in evaluating these medical opinion by noting that "[t]here are no treating source opinions to support the allegations of disabling functional limitations." (Doc. 16 at 16-18). Plaintiff argues that the opinions of Drs. Ganesh, Noia, and Harding were discounted and received no weight because they did not provide an opinion that Plaintiff was disabled, which is a determination reserved to the Commissioner. Plaintiff's argument is not well taken. As discussed *supra*, neither Dr. Ganesh, Dr. Noia, nor Dr. Harding are treating sources. The ALJ's concluding sentence that there are no treating source opinions to support Plaintiff's allegations of disabling limitations therefore does not reflect on the ALJ's evaluation of Dr. Ganesh's, Dr. Noia's, or Dr. Harding's opinions, and the ALJ did not discount any of their opinions on this basis.

### VI. Conclusion

Upon consideration of the foregoing, the Commissioner's final decision is **AFFIRMED**. The Clerk is **DIRECTED** to enter judgment accordingly and **CLOSE** the file.

**DONE** and **ORDERED** in Orlando, Florida on September 6, 2016.

THOMAS B. SMITH
United States Magistrate Judge

Copies furnished to Counsel of Record